**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| MARYLOU HULTGREN, Plaintiff, | ) | |
| v. | ) | Cause No.: 2:12-CV-478-PRC |
| LAWRENCE VERACCO, in his individual capacity, AL GANDOLFI, in his individual capacity, PATRICK HUBBARD, in his individual capacity and LAKE CENTRAL SCHOOL CORPORATION, Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment [DE 32], filed by Defendants Lawrence Veracco, Al Gandolfi, Patrick Hubbard, and Lake Central School Corporation on January 31, 2014. This motion became fully briefed on March 31, 2014.

## I. Procedural Background

On November 19, 2012, Plaintiff Marylou Hultgren filed a ten-count Complaint in this Court against Lawrence Veracco, Al Gandolfi, Patrick Hubbard, in their individual capacities, and Lake Central School Corporation (Lake Central).[1] The Complaint alleges that Defendants engaged in religious discrimination and retaliated against Plaintiff by firing her for complaining about religious discrimination. Additionally, the Complaint alleges that Defendants are liable under 42 U.S.C. § 1983 for violating Plaintiff's First and Fourteenth Amendment rights. She also brings a handful of pendent state-law claims for intrusion upon her privacy, intentional infliction of emotional distress, and negligent infliction of emotional distress. Plaintiff also alleges that Defendants Lake Central,

[1] During the time of the alleged incident, Defendant Veracco was the Lake Central Superintendent, Defendant Gandolfi was the Lake Central Assistant Superintendent, and Defendant Hubbard was the Lake Central Transportation Department Director.

Veracco, and Gandolfi are vicariously liable for the actions of Defendant Hubbard and for negligent supervision.

On March 18, 2013, Plaintiff filed a formal Complaint with the United States Equal Employment Opportunity Commission alleging retaliation and religious discrimination. Plaintiff received a Right to Sue letter from the United States Department of Justice on June 4, 2013. Plaintiff, however, has never filed or attached a Tort Claims Notice as required by Indiana Code § 34-13-3-10.

Plaintiff admitted in her deposition that Defendant Hubbard had not retaliated or discriminated against her in any way. Plaintiff filed a Motion to Dismiss Defendant Hubbard on August 9, 2013. The Court denied that motion, ruling that Plaintiff did not comply with Federal Rule of Civil Procedure 41(a)(1)(A)(ii), which requires the signature of all parties who have appeared in order to voluntarily dismiss a defendant. Therefore, even though Plaintiff admitted that Defendant Hubbard neither retaliated nor discriminated against her, he remains a party in this case.

On January 31, 2014, Defendants filed this motion, seeking summary judgment on all of Plaintiff's claims. Plaintiff filed a Response on March 20, 2014, and Defendants filed a Reply on March 31, 2014.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## II. Factual Background

In 2009, Plaintiff's employer, Defendant Lake Central, issued the "Lake Central Transportation Procedure and Benefit Handbook" ("the Handbook"), which was in effect from

August 2009 through July 2010. It contained a policy on bereavement leave, which provided that employees were entitled to five days of paid leave for the death of an immediate family member and one day of paid bereavement leave for the death of an aunt, uncle, niece, or nephew. The days did not need to be used immediately, but had to be expended within a year of the person's death. If leave was taken later than a week after the death of the family member, employees had to give forty-eight hours notice and complete a Bereavement Leave Request form. The Handbook also contained a transportation department reduction-in-force policy, which stated that employees would be laid off according to seniority.

The Handbook expired in the fall of 2010, and, sometime that same year, Defendants Veracco and Hubbard met with transportation department employees to explain that the Handbook was no longer in effect, but the administration would nevertheless try to honor the policies. Defendants specifically explained, however, that, if there was to be a reduction in force, terminations would be determined by evaluations and attendance, not by seniority.

**A. Bereavement Leave**

During the 2011–12 school year, abuse of the Handbook's bereavement leave policy by transportation department employees caused attendance problems. In March of 2012, Defendant Hubbard addressed the issue, distributing a memorandum explaining that, henceforward, bereavement requests would require providing an agenda explaining what the bus driver planned to do on the day off. After receiving the memorandum, Plaintiff spoke with Janice Zuccola, another transportation department employee, about the new bereavement leave policy. Zuccola explained that when she took bereavement leave, she also had to provide an agenda.

Plaintiff's husband's aunt passed away on March 28, 2012, and Plaintiff requested

bereavement leave for April 18, 2012. In accordance with the Handbook's bereavement leave policy, Plaintiff filled out a form and attached a copy of the obituary. Defendant Hubbard denied the application because there was no accompanying agenda. Plaintiff resubmitted her application with attached pages of the Handbook dealing with bereavement leave.

Plaintiff spoke to Defendant Veracco, who told her that she would have to provide an agenda in order to receive her paid bereavement leave. Plaintiff submitted an agenda letter to Defendants and the school board on April 18, 2012. In that letter, Plaintiff expressed anger at having to provide details about her bereavement day. The school board did not respond to the letter, and Plaintiff received her paid bereavement leave with no further questions.

**B. Reduction in Force**

Throughout the 2011–12 school year, Defendant Lake Central was engaged in a personnel reduction across the entire school corporation. Defendants Hubbard, Veracco, and Gandolfi determined twelve bus routes were "running light" and decided to eliminate them to save money. On May 3, 2012, Defendant Gandolfi met with transportation department employees, informing them that the school corporation's finances necessitated a reduction in force, but that employees could reapply for their positions. After the meeting, Defendant Gandolfi sent the transportation department a memorandum outlining rehiring criteria such as committing to a 180 day schedule, getting along with the administration, and having satisfactory attendance. Defendant Gandolfi's meeting and memorandum reiterated the prior changes to the reduction-in-force policy in regard to no longer following seniority.

On June 6, 2012, Plaintiff met with Defendants Hubbard and Gandolfi for an interview as a part of the rehiring process. During the interview, Plaintiff mentioned her anger issues, but they

did not discuss any absenteeism. After conducting the interview, considering Plaintiff's attitude, reviewing her attendance problems, and consulting with Defendant Gandolfi, Defendant Hubbard decided not to rehire Plaintiff.

On June 13, 2012, Plaintiff received a letter stating that Defendant Lake Central eliminated her position "due to very difficult financial circumstances." Pl. Ex. J. Defendant Lake Central offered Plaintiff a place on the substitute driver list, but she declined. On June 18, 2012, Plaintiff submitted a letter of retirement to Defendant Lake Central.

## III. Summary Judgement Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes

demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on her pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show

that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249–50.

## IV. Analysis

### A. Threshold Issues

Before reaching the merits of Defendants' motion—which seeks summary judgment on all of Plaintiff's claims—the Court first considers a handful of threshold matters. First, out of the ten claims alleged in the Complaint, Plaintiff's Response only addresses her Title VII claims of unlawful retaliation. By choosing not to respond, she has waived all her other claims. *See Palmer v. Marion County*, 327 F.3d 588, 598 (7th Cir. 2003) (holding that claims not addressed in a summary judgment opposition brief are deemed abandoned).

Second, in addition, Plaintiff's state tort claims must fail because she did not comply with the provisions of the Indiana Tort Claims Act (ITCA). Ind. Code § 34-13-3-12. The ITCA bars claims against political subdivisions unless the plaintiff notifies the governing body of the political subdivision along with the Indiana political subdivision risk management commission within 180

days after the loss occurred. Ind. Code § 34-13-3-8; *Davidson v. Perron*, 716 N.E.2d 29, 34 (Ind. Ct. App. 1999); *Alexander v. City of South Bend*, 256 F. Supp. 2d 865, 875 (N.D. Ind. 2003).

Third, Defendants contend that Plaintiff's Response violates Local Rule 56-1, which provides that a response to a Summary Judgment Motion must contain a "statement of genuine issues" linked to the record. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994). Defendants point out, correctly, that Plaintiff's statement of facts contains argument and does not cite to the record,and hence asks the Court to ignore these statements. Nevertheless, the Court chooses to exercise its discretion and "overlook any transgression." *Id*. at 923.

**B. Retaliation**

Title VII makes it unlawful for employers to discriminate against an employee because the employee has opposed any practice made unlawful by Title VII. 42 U.S.C. 2000e-3(a); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006). "This type of discrimination is commonly called retaliation." *Id.* (internal quotation marks omitted). Plaintiffs can prove retaliation directly or through the "familiar indirect method of proving discrimination announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005); *Tomanovich*, 457 F.3d at 662. Under the direct method, a plaintiff must prove:

(1) that she engaged in a statutorily protected activity;

(2) that the employer initiated an adverse employment action; and

(3) that a causal connection existed between the two.

*Tomanovich*, 457 F.3d at 663 (citing *Moser*, 406 F.3d at 903). The indirect method, by contrast, requires a plaintiff to prove:

(1) that the plaintiff is a member of a protected class or engaged in a statutorily protected activity;

(2) that the plaintiff's job performance met the employer's legitimate expectations;

(3) that the plaintiff suffered an adverse employment action; and

(4) that similarly situated employees received more favorable treatment than the plaintiff.

*Id.*; *McDonnell Douglas Corp.*, 411 U.S. at 802. "If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to present evidence of a non-discriminatory reason for its employment action." *Tomanovich*, 457 F.3d at 663 (citing *Adusumilli v. City of Chicago,* 164 F.3d 353, 362 (7th Cir.1998)). If the employer meets this burden, however, the burden shifts back to the plaintiff, who must "demonstrate that the employer's reason is pretextual." *Id.* (quoting *Moser,* 406 F.3d at 904). "[F]ailure to satisfy any element of the *prima facie* case proves fatal to the employee's retaliation claim." *Hilt-Dyson v. City of Chicago,* 282 F.3d 456, 465 (7th Cir. 2002).

***1. The Direct Test***

Plaintiff contends that her complaint to the school board constitutes a protected activity under Title VII. Defendants disagree, arguing that the complaints made in Plaintiff's letter are not about religious discrimination, but about violations of the Handbook. The Court need not decide whether the letter constitutes protected activity, however, because, as discussed below, Plaintiff cannot show that a causal connection existed between the letter and any adverse employment action.

Plaintiff's firing is unquestionably an adverse employment action. *Haywood v. Lucent-Technologies*, 323 F.3d 524, 531 (7th Cir. 2003). Plaintiff thus must show that direct or circumstantial evidence supports finding a causal connection between the complaint letter and her

firing. *See Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643 (7th Cir. 2013). The Seventh Circuit Court of Appeals has noted that "admissions of illegal discrimination and retaliation are rare" such that it is "not surprising [when a plaintiff] has not presented a 'smoking gun' confession by [the defendant]." *Id.* at 643.

Because Plaintiff offers no direct evidence for her claim of retaliation, she must satisfy the direct method with circumstantial evidence, sometimes referred to as "a convincing mosaic of circumstantial evidence." *Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012) (quoting *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 771 (7th Cir. 2008)). The convincing mosaic may include

> (1) suspicious timing, ambiguous statements oral or written, and other bits and pieces from which a retaliatory intent might be drawn,
>
> (2) evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently, [or]
>
> (3) evidence that the employer offered a pretextual reason for an adverse employment action.

*Perez v. Thorntons, Inc.*, 731 F.3d 699, 711 (7th Cir. 2013) (quoting *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1180 (7th Cir. 2013)). These categories are not a test, nor are they exclusive. *Hobgood*, 731 F.3d at 644. However, one category by itself is usually not enough to establish a convincing mosaic. *Id.*

Plaintiff lodged her complaint letter to the Defendants and the school board on April 18, 2012, and lost her job on June 13, 2012. Even though temporal proximity between the two events is important, *Hicks v. Forest Pres. Dist. of Cook County, Ill.*, 677 F.3d 781, 789 (7th Cir. 2012), it is rarely enough to prove causation. *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 675 (7th Cir. 2011); *see also Lewis v. City of Chicago*, 496 F.3d 645,655 (7th Cir. 2007) (explaining that

the close proximity in time between the alleged discrimination and the adverse employment action does not mean one caused the other).

Plaintiff admitted that Defendant Lake Central cut around 100 jobs during the 2011–12 school year, and that the transportation department was one of the last departments to face job cuts. Moreover, the reduction-in-force policy changed from relying on seniority to emphasizing job performance well *before* Plaintiff's letter to the school board. She was not the only driver cut—twelve others, of varying seniority, age, and gender, lost their jobs too. Most strikingly, Plaintiff admitted that Defendant Hubbard, who interviewed her and made the termination decision, did not retaliate or discriminate against her. Taken together, there is insufficient circumstantial evidence to form a convincing mosaic of circumstantial evidence linking her complaint letter to her firing.

Finally, insofar as the policy requiring providing an agenda and the initial denial of bereavement leave can be construed as an adverse employment action, these both came *before* Plaintiff complaint letter and cannot have been caused by it. Since Plaintiff cannot show causation, her claim under the direct test fails.

***2. The Indirect Test***

Plaintiff's claim also fails the indirect test. At the very least, she has failed to present any evidence that similarly situated employees—that is, employees "directly comparable in all material respects" to her—fared better than she did. *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 531 (7th Cir. 2003) (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)). There is no evidence of anyone else who complained about the bereavement leave policy and suffered an adverse employment action. There is no *prima facie* case of retaliation under the indirect

test.

And, even if Plaintiff could prove all elements of the indirect test, her claim would still fail the two-part burden-shifting test to determine if her firing was pretextual. Once a plaintiff makes out a *prima facie* case, the burden shifts to the defendant who must provide a lawful, nondiscriminatory reason for the adverse employment action. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001). Here, Defendants claim to have fired Plaintiff because of her anger issues, her attendance problems, and Defendant Lake Central's budget pressure. These reasons are lawful and nondiscriminatory, and the burden accordingly shifts back to Plaintiff to show that her firing was pretextual. *Sitar v. Ind. Dept. of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003).

Again, Plaintiff has no evidence aside from suspicious timing, which, alone, is not enough. *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 629 (7th Cir. 2001); *see also Martino v. W. & S. Fin. Group*, 715 F.3d 195, 204 (7th Cir. 2013). Indeed, Plaintiff testified that Defendant Hubbard, who fired her, neither retaliated nor discriminated against her. Her claim thus fails under the indirect test as well, and summary judgment on Plaintiff's claim of retaliation is accordingly appropriate.

## V. CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment [DE 37] and **DIRECTS** the Clerk of Court to enter judgment in favor of Defendants. The final pretrial conference and trial settings in this case are **VACATED**.

SO ORDERED this 27th day of June, 2014.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record

